UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SARAH MARTIN, as Administrator of the
Estate of LEON MARTIN, deceased,

                Plaintiff,

                Judge
  - against -                    VERIFIED COMPLAINT

UNITED STATES OF AMERICA,

                Defendant.
------------------------------------------------------------X

Plaintiff SARAH MARTIN, as Administrator of the Estate of LEON MARTIN, deceased, alleges:

## JURISDICTION AND VENUE

1. Plaintiff SARAH MARTIN resides at 75 LaSalle Street, City, County, and State of New York.

2. On or about the 4th day of February, 2011, plaintiff's decedent LEON MARTIN died.

3. Prior to his death, plaintiff's decedent LEON MARTIN resided at 75 LaSalle Street, City, County, and State of New York.

4. Plaintiff SARAH MARTIN petitioned Surrogate's Court, New York County to be appointed Administrator of the Estate of LEON MARTIN, deceased.

5. On the 7th day of March, 2011, by Order of Hon. Kristin Booth Glen, Surrogate, New York County, Letters of Administration in the Estate of LEON MARTIN were issued to plaintiff SARAH MARTIN.

6. This action arises under Title 28, United States Code, Sections 1346(b) and 2671-2680 and 42 USC §233.

1

7. Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, which is located at 423 East 23rd Street, City, County and State of New York, is in the Southern District of New York of the United States District Court.

8. From June 11, 2009 through May 20, 2009, and prior and subsequent thereto, Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System was owned and operated by defendant UNITED STATES OF AMERICA.

## THE UNDERLYING FACTS

9. Defendant, UNITED STATES OF AMERICA, its agents, servants and/or employees, operated, maintained, managed, controlled, and supervised the aforesaid health care center which held itself out to the public at large and, more particularly, to the plaintiff herein as a health care center duly qualified and capable of rendering adequate medical care and treatment to the public at large and for such purposes hired physicians, radiologists, surgeons, nurses, attendants and other personnel.

10. Michael Poles, M.D. is a physician duly licensed to practice medicine in the State of New York.

11. Michael Poles, M.D. held himself out as a physician specializing in the field of gastroenterology.

12. Michael Poles, M.D. maintains an office for his practice at Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, 423 East 23rd Street, City, County and State of New York, and is employed by the United States of America.

13. Michael Poles, M.D. held himself out to the public at large and more particularly to the plaintiff's decedent LEON MARTIN as duly qualified to render requisite medical care and treatment to the public at large, and more particularly, to the plaintiff's decedent herein.

2

14. Elizabeth Ross, M.D. is a physician duly licensed to practice medicine in the State of New York.

15. Elizabeth Ross, M.D. held herself out as a physician specializing in the field of gastroenterology.

16. Elizabeth Ross, M.D. maintains an office for her practice at Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, 423 East 23rd Street, City, County and State of New York, and is employed by the United States of America.

17. Elizabeth Ross, M.D. held herself out to the public at large and more particularly to the plaintiff's decedent LEON MARTIN as duly qualified to render requisite medical care and treatment to the public at large, and more particularly, to the plaintiff's decedent herein.

18. Antonio Subietas-Mayol, M.D. is a physician duly licensed to practice medicine in the State of New York.

19. Antonio Subietas-Mayol, M.D. held himself out as a physician specializing in the field of pathology.

20. Michael Poles, M.D. maintains an office for his practice at Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, 423 East 23rd Street, City, County and State of New York, and is employed by the United States of America.

21. Antonio Subietas-Mayol, M.D. held himself out to the public at large and more particularly to the plaintiff's decedent LEON MARTIN as duly qualified to render requisite medical care and treatment to the public at large, and more particularly, to the plaintiff's decedent herein.

22. Commencing on or about June 11, 2009 through May 20, 2010, and prior and subsequent thereto, plaintiff's decedent LEON MARTIN came under the medical care and treatment of Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, 423 East 23rd Street, City, County and State of New York, which is owned by defendant, UNITED STATES OF AMERICA.

23. It was the duty of the defendant, UNITED STATES OF AMERICA, to reasonably care for, treat and supervise its patients, and more particularly, the plaintiff herein who sought treatment at its Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, 423 East 23rd Street, City, County and State of New York.

24. Defendant, UNITED STATES OF AMERICA, by and through its agents, servants and/or employees rendered medical care and treatment to plaintiff's decedent LEON MARTIN from on or about June 11, 2009 through May 20, 2010, and prior and subsequent thereto.

25. Commencing on or about June 11, 2009 through May 20, 2010, and prior and subsequent thereto, plaintiff's decedent LEON MARTIN came under the medical care and treatment of Michael Poles, M.D.

26. It was the duty of Michael Poles, M.D. to reasonably care for, treat and supervise his patients, and more particularly, the plaintiff's decedent herein.

27. Michael Poles, M.D. attended to plaintiff's decedent LEON MARTIN in the course and scope of his employment with defendant UNITED STATES OF AMERICA.

28. Michael Poles, M.D. was acting in an official capacity on behalf of defendant UNITED STATES OF AMERICA in the care and treatment of patients at Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, 423 East 23rd Street, City, County and State of New York.

4

29. Commencing on or about June 11, 2009 through May 20, 2010, and prior and subsequent thereto, plaintiff's decedent LEON MARTIN came under the medical care and treatment of Elizabeth Ross, M.D.

30. It was the duty of Elizabeth Ross, M.D. to reasonably care for, treat and supervise her patients, and more particularly, the plaintiff's decedent herein.

31. Elizabeth Ross, M.D. attended to plaintiff's decedent LEON MARTIN in the course and scope of her employment with defendant UNITED STATES OF AMERICA.

32. Elizabeth Ross, M.D. was acting in an official capacity on behalf of defendant UNITED STATES OF AMERICA in the care and treatment of patients at Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, 423 East 23rd Street, City, County and State of New York.

33. Commencing on or about June 11, 2009 through May 20, 2010, and prior and subsequent thereto, plaintiff's decedent LEON MARTIN came under the medical care and treatment of Antonio Subietas-Mayol, M.D.

34. It was the duty of Antonio Subietas-Mayol, M.D. to reasonably care for, treat and supervise his patients, and more particularly, the plaintiff's decedent herein.

35. Antonio Subietas-Mayol, M.D. attended to plaintiff's decedent LEON MARTIN in the course and scope of his employment with defendant UNITED STATES OF AMERICA.

36. Antonio Subietas-Mayol, M.D. was acting in an official capacity on behalf of defendant UNITED STATES OF AMERICA in the care and treatment of patients at Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System, 423 East 23rd Street, City, County and State of New York.

37. Veterans Affairs Medical Center Manhattan, New York Harbor Healthcare System was owned by the defendant, UNITED STATES OF AMERICA, and the health care center employees were acting in an official capacity on behalf of the defendant, UNITED STATES OF AMERICA, in the care and treatment of patients at its medical facility, and more particularly, plaintiff's decedent LEON MARTIN.

38. On December 13, 2010, plaintiff's decedent LEON MARTIN and plaintiff SARAH MARTIN presented their claim in writing to the defendant, UNITED STATES OF AMERICA, for damages in the amount of $10,000,000.00.

39. On the 4th day of February, 2011, plaintiff's decedent LEON MARTIN died.

40. On March 15, 2011 plaintiff SARAH MARTIN presented her amended claim in writing to the defendant, UNITED STATES OF AMERICA, for damages in the amount of $10,000,000.00.

41. On April 5, 2011, defendant UNITED STATES OF AMERICA, by Thomas Kennedy, Esq., Senior Attorney, Department of Veterans Affairs, Office of Regional Counsel acknowledged receipt of the perfected claim and requested additional documents and information.

42. On April 27, 2011, plaintiff SARAH MARTIN responded to the request of Thomas Kennedy, Esq. and provided the requested documents and information.

43. To date, the defendant UNITED STATES OF AMERICA has not yet denied said claim.

44. More than six months has passed since the reopening of plaintiff SARAH MARTIN's administrative claim and all prerequisites for the commencement of an action against defendant UNITED STATES OF AMERICA have been complied with.

45. This action is timely.

## FIRST COUNT

46. The aforesaid occurrence was caused by the carelessness and negligence of the defendant in its care and treatment of the plaintiff's decedent LEON MARTIN; in failing to timely diagnose colon cancer; in failing to timely diagnose cancer and/or the progression thereof; in failing to properly diagnose colon cancer; in allowing said malignant disease to grow and spread; in failing to adequately react and/or respond and/or address signs and symptoms of rectal bleeding, constipation, and changes in digestion and bowel movements; in failing to adequately react to and or respond and/or address changes in bowel movements and abdominal pain; in allowing patient's colon cancer to metastasize; in failing to perform a barium enema; in failing to timely perform a rectal examination; in failing to recommend and/or perform regular colonoscopies; in failing to timely perform a recommend and/or repeat colonoscopy/biopsy; in obtaining an improper and/or inadequate biopsy; in failing to obtain and/or request another specimen for interpretation; in failing to call in specialists and/or consults to interpret the biopsy; in failing to clinically correlate claimant's diagnosis with his symptoms; in failing to verify and/or confirm the accuracy of the biopsy diagnosis; in failing to timely perform a PET-scan; in failing to timely perform a stool guaiac; in failing to timely perform an imaging study of the abdomen and/or pelvis; in failing to order and perform sufficient blood studies on a regular basis; in failing to timely refer patient to proper specialists; in failing to provide proper follow-up care to the patient; in failing to perform a proper physical examination; in failing to render timely, proper and/or adequate physical examinations; in failing to heed significant signs and complaints; in failing to perform the accepted standard medical procedures; in failing to prevent and treat what was otherwise preventable and treatable; in failing to consult with proper

specialists; in failing to interpret and/or misinterpreting the results of the tests and examinations of the patient; in failing to timely treat the patient's condition; in failing to timely diagnose the patient's condition; in failing to order and perform the appropriate tests and studies; in failing to properly read and interpret the results of those tests and studies that were taken; in failing to treat the patient's condition in a timely and appropriate manner; in failing to properly and adequately train and supervise it's personnel; in failing to perform a proper, thorough, and accurate work-up and physical examination of the patient; in causing the unfettered progression of the patient's condition; in causing and/or allowing patient's condition to worsen and deteriorate; in failing to exercise the degree of skill, care and diligence to which this patient was entitled; and The United States of America was otherwise careless and negligent.

47. As a result of the carelessness and negligence of the defendant, plaintiff's decedent LEON MARTIN was caused to sustain severe and permanent personal injuries, including, among other things, metastasis of cancer; was caused to undergo a more complicated surgical course, including colostomy; was caused to have his condition to worsen and progress; unfettered progression of a malignant disease; cancerphobia; was caused to undergo chemotherapy; was caused to have his life expectancy significantly diminished; weight loss; was caused to suffer marked mental anguish, emotional distress, embarrassment and anxiety due to his physical condition; was caused to be confined to home and bed for a lengthy period of time and may, in the future, be so caused; was caused to be rendered sick, sore, lame and disabled and may, in the future, be so caused; was caused to undergo extensive medical care, treatment and procedures and may, in the future, be so caused; was caused to expend substantial sums of money for medical care and treatment and may, in the future, be so caused; was caused to seek extensive medical care and treatment and may, in the future, be so caused; was caused to be

incapacitated from attending to his usual duties and occupation, and may, in the future, be so caused; was caused to suffer a loss of enjoyment of life; fear of dying prior to his wrongful death, wrongful death and LEON MARTIN was otherwise damaged, all of which damages and injuries are permanent in nature and continuing into the future.

48. Under the circumstances, the entity or person responsible for the care and treatment of the plaintiff, if a private entity or person, would be liable for the damage resulting from its careless and negligent treatment.

## SECOND COUNT

49. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs of this Complaint numbered "1" through "48", inclusive, with the same force and effect as if more fully set forth at length herein.

50. Defendant failed to obtain plaintiff's decedent LEON MARTIN's informed consent to the treatment, or lack of treatment, rendered to him.

51. Proper medical practice required defendant to obtain plaintiff's decedent LEON MARTIN consent to the treatment, or lack of treatment, rendered to him.

52. A reasonably prudent person in plaintiff's decedent LEON MARTIN's position would not have undergone the treatment, or lack of treatment, provided by defendant had he been properly informed of the risks and hazards of such treatment, or lack of treatment.

53. Plaintiff's decedent LEON MARTIN would not have agreed to the treatment, or lack of treatment, provided by defendant, had he been properly informed of the risks and hazards of such treatment, or lack of treatment.

54. Defendant's failure to obtain plaintiff's decedent LEON MARTIN's informed consent is a contributing cause of the injuries sustained by plaintiff's decedent LEON MARTIN, as set forth above.

55. The aforesaid occurrence and injuries resulting therefrom were caused solely by the carelessness and negligence of the defendant.

## THIRD COUNT

56. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs of this Complaint numbered "1" through "48" and "49" through "55", inclusive, with the same force and effect as if more fully set forth at length herein.

57. As a result of the carelessness and negligence of the defendants as aforesaid, plaintiff's decedent LEON MARTIN was cause to suffer his subsequent wrongful death on February 4, 2011.

58. As a result of the foregoing, the heirs, distributees and next-of-kin whom plaintiff SARAH MARTIN represents were caused to sustain pecuniary loss, loss of society, services, support, financial support, loss of inheritance, and companionship and were caused to incur medical and funeral expenses.

59. The aforesaid occurrence and injuries resulting therefrom were caused solely by the carelessness and negligence of the defendant.

WHEREFORE, plaintiff demands judgment against the defendant, in the sum of TEN MILLION ($10,000,000.00) on the First, Second, and Third Counts.

Dated: New York, NY
October 31, 2011

SANOCK, NEWMAN & TURRET, LLP

By: _____
Joshua Fogel (9036)
Attorneys for Plaintiff
225 Broadway, 8th Floor
New York, NY 10007
(212) 962-1190

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SARAH MARTIN, as Administrator of the
Estate of LEON MARTIN, deceased,

                Plaintiff,

   - against -                           **ATTORNEY'S CERTIFICATION**

UNITED STATES OF AMERICA,

                Defendant.
-----------------------------------------------------------X

JOSHUA FOGEL, an attorney duly admitted to practice before the Courts of this State, certifies the following:

1. I am an attorney and Associate of the law firm of SANOCKI NEWMAN & TURRET, LLP, attorneys for the plaintiff in the within action.

2. I have reviewed the facts of the case and have consulted with a physician duly licensed to practice medicine and reasonably believe that said physician is knowledgeable with respect to the relevant issues involved in this action.

3. Based upon the discussions had with the aforesaid physician, I have concluded, on the basis of my review and consultation, that there is a reasonable basis for the commencement of this action.

Dated: New York, New York
         October 31, 2011

                                                          JOSHUA FOGEL (9036)

## ATTORNEY'S VERIFICATION

JOSHUA FOGEL, an attorney and Associate of the law firm of SANOCKI NEWMAN & TURRET, LLP, attorneys for the plaintiff(s) in the within action, duly admitted to practice law in the Courts of the State of New York, affirms the following statements to be true under the penalties of perjury, pursuant to Rule 2106 of the CPLR:

That affirmant has read the foregoing COMPLAINT and knows the contents thereof; that the same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters affirmant believes them to be true.

Affirmant further states that the source of affirmant's information and grounds of affirmant's belief are derived from the file maintained in the normal course of business of the attorneys for the plaintiff(s).

Affirmant further states that the reason this verification is not made by the plaintiff is that the plaintiff does not reside within the County of New York, which is the County where the attorneys for the plaintiff(s) herein maintains their offices.

Dated: October 31, 2011
New York, NY

Joshua Fogel (9036)